IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

COLLEEN R. FIORUCCI,                    )
                                        )
            Plaintiff,                  )    No.  6:12-cv-2227-TC
                                        )
            v.                          )    O R D E R
                                        )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )
_____ )

Plaintiff brings this proceeding to obtain judicial review of
the Commissioner's final decision denying plaintiff's application
for disability insurance benefits and supplemental security income
benefits.

Plaintiff asserts disability beginning February 28, 2006, due
to degenerative disc disease, arthritis in her feet and knees,
kidney and bladder problems, and post-traumatic stress disorder.
After a hearing, an administrative law judge (ALJ) determined that
plaintiff is not disabled.  Plaintiff contends the ALJ erred in:

1 - ORDER

(1) failing to give full credit to the opinion of plaintiff's treating physician; (2) failing to give clear and convincing reasons for rejecting plaintiff's testimony; and (3) failing to meet his burden of proving that plaintiff retains the ability to perform work.

Plaintiff has degenerative issues at multiple levels of her cervical spine. Tr. 457. Plaintiff also has psoriatic arthrophathy with moderate to severe arthritic changes in her fingers. Tr. 338. In addition, plaintiff has a generalized anxiety disorder. Tr. 577. Plaintiff's continued treatment for her chronic conditions include potent medications such as methadone and flexeril for pain, ativan for anxiety and methotrexate for arthritis. E.g., Tr. 586.

Dr. Peter Lund began treating plaintiff in October of 2005. Tr. 603. In January of 2011, Dr. Lund completed a questionnaire provided by plaintiff's counsel in which he noted that: plaintiff has poor pain control; depression, anxiety and post traumatic stress disorder affect her physical condition; her pain and other symptoms constantly interfere with her attention and concentration needed to perform simple tasks; she is incapable of even low stress jobs; she will often need to take unscheduled breaks during an eight-hour workday; she has good days and bad days; and that she would likely miss five days of work or more per month due to her impairments. Tr. 603-06. Curiously, when asked in a separate

2 - ORDER

question how many days per month plaintiff is likely to be absent from work, Dr. Lund wrote "98%" on a line next to the answer never and "98%" on a line next to the answer more than four days per month (which appeared on the following page).  Tr. 605-06.

The ALJ rejected this opinion stating it is inconsistent: with the most recent treatment records from Dr. Lund's clinic; with the reports that plaintiff's pain and anxiety are managed with medication; with plaintiff's activities of daily living; and it is internally inconsistent as it indicates 98 percent of the time plaintiff would never miss work and 98 percent of the time she would miss more than fours days per month.  In addition, the ALJ noted that Dr. Lund's diagnosis of cervical radiculopathy was ultimately disproved via electrical studies revealing only moderate carpal tunnel syndrome.  Tr. 30-31.  However, the ALJ's reasoning fails to provide the necessary specific and legitimate reasons, supported by the record, for rejecting Dr. Lund's opinion.

While Dr. Lund's treatment notes have at times noted benign findings such as normal range of motion with no spinous tenderness, Tr. 408, such in not inconsistent with Dr. Lund's overall assessment.   The Commissioner makes much of the fact that on numerous occasions, treatment records indicate that methadone is helpful for neck and upper extremity pain, e.g., Tr. 361.  However, often included along side such statements are notes such as "significant neck pain at all times." Tr. 328. Additionally, the

3 - ORDER

record does contain statements such as plaintiff's anxiety is "well managed on effexor," or that her pain is "well controlled ... on pain medication," the record also notes that "she knows her limits with pain and tries to avoid activities that cause exacerbations in her pain level." Tr. 586. Therefore, the fact that plaintiff "manages" her pain and other symptoms with medications is not inconsistent with Dr. Lund's opinion regarding plaintiff's ability to work, especially in light of Dr. Lund's opinion that plaintiff has good days and bad days.

The same is true of plaintiff's activities of daily living. Plaintiff does care for her five Chihuahuas, can walk for about a block each day, visit with neighbors, prepare her own meals, and perform basic cleaning tasks. However, such activities are in no way inconsistent with Dr. Lund's opinion that plaintiff's symptoms would cause her to miss work five days a month. Indeed, plaintiff qualified her abilities with regard to her daily activities by noting that "[i]t depends on the day. It depends on my health ... it takes very little to aggravate the C6 disc in my neck which causes horrible pain." Tr. 211. Plaintiff's description of her daily activities is entirely consistent with Dr. Lund's opinion.

The purported internal inconsistency in the opinion itself noted by the ALJ is nothing more than a simple mistake in filling out the questionnaire. While there is a "98%" estimate as to the average days missed per month for both never and more than four

4 - ORDER

days per month, when Dr. Lund provided a more specific direct answer to a follow-up question of plaintiff's ability to work on a consistent and reliable basis for 40 hours per week, Dr. Lund noted five or more days of work per month would be missed.    Tr. 606. Given that Dr. Lund also opined that plaintiff's symptoms would constantly interfere with her ability to concentrate on even simple tasks, Tr. 604, the only reasonable interpretation of the opinion as a whole is that plaintiff would miss five or more days of work per month.

The fact that electrical studies ultimately disproved a diagnosis of cervical radiculopathy does not discredit Dr. Lund's opinion either.    Dr. Lund often referred to plaintiff's complaints of radiculopathy symptoms, but he did not actually diagnose such. Moreover, Dr. Nolan, who discounted the diagnosis of cervical radiculopathy noted that plaintiff's arm and hand complaints could conceivably be attributed to carpal tunnel syndrome, but he was unable to generate evidence for that diagnosis.    Tr. 320.    The record does not demonstrate that plaintiff does not suffer cervical radiculopathy like symptoms.

The ALJ failed to provide specific and legitimate reasoning supported by the record to discount the opinion of Dr. Lund.    Where an ALJ provides legally insufficient reasons for rejecting medical opinion, that opinion is treated as true.    Harmen v. Apfel, 211 F3d. 1172, 1179 (9th Cir. 2000).    Dr. Lund's opinion establishes

5 - ORDER

disability.  See Tr. 87 (vocational expert opines that if plaintiff were to regularly miss more than two days of work per month, competitive employment is precluded).  Accordingly, there are no further issues that need to be resolved before a determination of disability can be made.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is reversed and the case is remanded for an award of benefits.

DATED this ___29___ day of January, 2014.

THOMAS M. COFFIN
United States Magistrate Judge

6 - ORDER